IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLASHIA WILLIAMS,** | : | |
| | : | **Civ. No. 1:15-CV-0493** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF YORK, PENNSYLVANIA, and** | : | |
| **VINCENT MONTE, PAUL DEHART, and** | : | |
| **NICK HANSEL, in their individual** | : | |
| **capacities,** | : | |
| | : | **Judge Sylvia H. Rambo** |
| **Defendants.** | : | |

## M E M O R A N D U M

In this Section 1983 civil rights action, Plaintiff Willashia Williams ("Plaintiff") brings claims for false arrest and excessive force, as well as state tort law claims, against the City of York and several individual police officers. Presently before the court is Plaintiff's motion for leave to file an amended complaint to substitute two police officers for the individual officers originally named in the complaint. (Doc. 26.) For the reasons stated herein, Plaintiff's motion will be granted.

## I.    **Background**

Prior to instituting the action, on September 12, 2013 and November 7, 2013, Plaintiff's counsel served formal notices of a personal injury claim upon the City of York, the receipt of which it acknowledged. (Doc. 27-1, pp. 2-3, 6, 8 of 55.) Plaintiff then initiated this action by filing a complaint against Officer Vincent

Monte ("Monte"), Officer Paul Dehart ("Dehart"), Officer Nick Hansel ("Hansel"), and the City of York (collectively "Defendants") on March 11, 2015. (Doc. 1.) In the complaint, Plaintiff alleged that the individual defendants, together with other unknown officers and acting in accordance with policy and customs set by the City of York, exercised excessive force when they falsely arrested and detained Plaintiff and her former fiance, Joseph Scott ("Scott"), on the night of March 12, 2013. (*Id.* at ¶¶ 10-44.) Plaintiff further alleged that, as a result of Defendants' actions, she suffered significant and permanent personal injuries, including a fractured right wrist. (*Id.* at ¶¶ 1, 45-54.)

Pursuant to standard case management practice, the parties submitted a joint case management plan. (Doc. 12.) In the case management plan, Plaintiff noted that she "reserve[d] the right to join additional officers if the results of discovery establish an appropriate basis for liability." (Doc. 12, p. 5 of 13.) The court then held a case management conference with counsel for the parties on May 20, 2015. (Doc. 13.)  In the case management order that followed, the court set a September 21, 2015 deadline for the amendment of pleadings and an October 19, 2015 deadline for the completion of fact discovery.  (Doc. 14.)

On June 1, 2015, Defendants filed an answer to the complaint, wherein they denied, or indicated that they lacked sufficient information to admit or deny, nearly all of the allegations in the complaint. (*See generally* Doc. 16.) Among several

2

affirmative defenses, Defendants claimed that they were entitled to absolute or qualified immunity and that, "at all times relevant to the acts alleged in the complaint, [] Defendants acted reasonabl[y], properly, and in the lawful exercise of their discretion." (*Id.*, Affirmative Defenses, ¶¶ D-G.)

On June 24, 2015, Defendants submitted their initial disclosures to Plaintiff pursuant to Federal Rule of Civil Procedure 26(a). (Doc. 27-1, pp. 10-13 of 55.) Defendants named Sergeant Nicholas Figge ("Figge") and Officer Terry L. Seitz ("Seitz") among several individuals with discoverable information. (*Id.* at pp. 10-11 of 55.) Defendants did not, however, provide an address, telephone number, or the subject of the discoverable information for any of the individuals named. (*Id.*)

On or about August 20, 2015, Plaintiff served her first set of interrogatories upon Defendants, requesting a description of the actions of each individual involved in Plaintiff's arrest and detention. (Doc. 28-1, p. 1-2 of 18.) On September 9, 2015, Defendants filed a joint motion for the enlargement of several case management deadlines, wherein the City of York averred that "[c]ounsel for both parties are diligently pursuing discovery in this case." (Doc. 18, p. 2 of 4.) The court granted the motion, which moved the fact discovery deadline to December 18, 2015. (Doc. 19.) On September 21, 2015, the deadline to amend the pleadings, Defendants responded to Plaintiff's first set of interrogatories, objecting to the form of Plaintiff's interrogatories and directing her to documentation

attached to their responses. (Doc. 28-1, pp. 1-2 of 18.) The attached documentation, however, did not contain descriptions of Figge's and Seitz's involvement in the alleged incident in the complaint, notwithstanding Plaintiff's request for the same. (*Id.* at pp. 7-18 of 18.)

On November 13, 2015, Plaintiff filed a motion for leave to file an amended complaint, intending to substitute Figge and Seitz for Hansel and Dehart. (Doc. 21.) Because discovery had not closed, however, Plaintiff moved to withdraw the motion on December 4, 2015 "to ensure any identification of specific individuals is accurate based on all information disclosed during the course of this case." (Doc. 23, ¶ 5.) The court granted the motion to withdraw. (Doc. 24.)

While being deposed on December 8, 2015, Figge testified that he first became aware of the present action from Dehart and Hansel and by reading about it in a newspaper. (Figge Dep. at pp. 5-7.) Figge further testified that, on the night of March 12, 2013, he pursued Plaintiff and Scott, threatened to tase Plaintiff for refusing to get into a police vehicle after she was handcuffed, and ordered another officer to separately handcuff her right wrist to the bench at police headquarters. (*Id.* at pp. 9-29.)  Seitz, on the other hand, testified at his deposition on December 14, 2015 that he did not become aware of the lawsuit until he was contacted by defense counsel in October 2015 regarding the deposition. (Seitz Dep. at pp. 6-9.)

Seitz also testified that he handcuffed and transported Plaintiff to police headquarters, where he wrote her criminal citation. (*Id.* at pp. 14-29.)

On January 4, 2016, Plaintiff's current counsel entered his appearance in substitution for Plaintiff's former counsel (Doc. 25), and received Figge's and Seitz's deposition transcripts (Doc. 27, p. 8 n.2 of 25). Four days later, Plaintiff filed the present motion for leave to file an amended complaint, seeking to substitute Figge and Seitz for Hansel and Dehart. (Doc. 26.) In her brief in support of the motion, Plaintiff argues that she should be permitted to amend her complaint because the claims in the amended complaint arose out of the same conduct as those in the original complaint and because Figge and Seitz received actual and constructive notice within 120 days after she filed her original complaint. (Doc. 27, pp. 13-21, 23-24 of 25.)

Defendants filed their brief in opposition to the motion to amend on January 22, 2016, arguing that Plaintiff cannot establish good cause to modify the scheduling deadlines. (Doc. 28, pp. 2-6 of 17.) Defendants further argue that the proposed amendment would prejudice Monte, Figge, and Seitz and that Figge and Seitz did not receive any notice of the action's existence within 120 days of the filing of the original complaint. (*Id.* at pp. 6-8, 10-16 of 17.) On February 4, 2016, Plaintiff filed a reply to Defendants' response. (Doc. 29.) Thus, the motion has been fully briefed and is ripe for deposition.

## II.   <u>Legal Standard</u>

When a party moves for leave to file an amended complaint after "the scheduling deadline has elapsed, the court must analyze the request under both Rule 15(a) and Rule 16(b) of the Federal Rules of Civil Procedure." *Heath v. Martin*, Civ. No. 04-cv-2275, 2013 WL 3776412, *6 (M.D. Pa. July 17, 2013). Generally, Rule 16 provides "district courts wide latitude to manage discovery and other pretrial matters, and to set deadlines for amending pleadings, filing motions, and completing discovery." *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007). Schedules may be modified, but "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In turn, good cause requires the party seeking relief to demonstrate that the schedule could not have been "reasonably . . . met despite the diligence of the party seeking the extension." *Id.*, advisory committee's note to 1983 amendment. "[A] party is presumptively not diligent if, at the commencement of the lawsuit, the party knows or is in possession of the information that is the basis for that party's later motion to amend." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 702 (E.D. Pa. 2007).

Rule 15(a), meanwhile, embodies the liberal pleading philosophy of the Rules and provides that a party may amend its pleading outside of the applicable time line set forth by the Rule only with leave of court or with the opposing party's written consent.  Fed. R. Civ. P. 15(a); *see also Arthur v. Maersk, Inc.*, 434 F.3d

196, 202 (3d Cir. 2006). Although a decision to grant or deny a motion for leave to amend rests within the sound discretion of the district court, *Foman v. Davis*, 371 U.S. 178, 182 (1962), the court is obligated to grant leave freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave should only be denied when "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith[,] or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Diaz v. Palakovich*, 448 F. App'x 211, 215-16 (3d Cir. 2011) (citing *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)).

Lastly, when a plaintiff moves for leave to amend the complaint to add a new party to a lawsuit after the statute of limitations has expired on his or her claims, the amendment is permissible only if the relation back doctrine of Rule 15 is satisfied. "Relation back is structured 'to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits.'" *Glover v. Fed. Deposit Ins. Corp.*, 698 F.3d 139, 145 (3d Cir. 2012) (quoting *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010)). "If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time." *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d

Cir. 2003) (citing *Singletary v. Pa. Dep't of Corrs.*, 266 F.3d 186, 189 (3d Cir. 2001)). An amendment to a pleading relates back when: (1) the claim or defense set forth in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading; (2) within the time period provided by Rule 4(m) for serving the summons and complaint, the party sought to be added received such notice of the action that it would not be prejudiced in maintaining a defense; and (3) the party sought to be added knew or should have known that, but for a mistake concerning his or her identity, he or she would have been made a party to the action. Fed. R. Civ. P. 15(c)(1); *Garvin*, 354 F.3d at 222.

## III.   Discussion

In their opposition, Defendants submit that Plaintiff's motion for leave to file an amended complaint should be denied because: (1) Plaintiff failed to utilize the requisite diligence to satisfy good cause under Rule 16; (2) the proposed amendment would prejudice the named and proposed defendants under Rule 15(a); and (3) the amended complaint does not relate back to Plaintiff's original complaint under Rule 15(c)(1)(C).[1] (*See generally* Doc. 28.) The court will address Defendants' arguments in turn.

---

[1] Defendants also argue that, because Plaintiff filed her motion after the September 21, 2015 amendment deadline, she cannot satisfy the excusable neglect and good cause requirements of Rule 6(b)(1)(B). (Doc. 28, pp. 8-9 of 17.) Federal Rule of Civil Procedure 6(b)(1)(B) allows the court, for good cause, to extend the time for an act "on motion made after the time has expired if the party failed to act because of excusable neglect." When confronted with a motion to amend a complaint after the deadline for amending pleadings and after the close of discovery, however,

8

Case 1:15-cv-00493-SHR   Document 31   Filed 05/06/16   Page 9 of 19

## A.    Rule 16

Defendants argue that Plaintiff failed to exercise the requisite diligence to satisfy the "good cause" requirement in Rule 16(b)(4). Defendants recite several examples of Plaintiff's alleged failures: (1) waiting eighteen months to file suit after hiring her attorney; (2) neglecting to ask her co-defendant Scott for the officers' identities; (3) neglecting to request an extension on the amendment of the pleadings deadline; (4) waiting five months to serve discovery requests; (5) waiting over a month to refile the motion to add Figge and Seitz; and (6) not pursuing timely discovery regarding Figge and Seitz despite their names appearing on her criminal citation. (Doc. 28, pp. 2-6 of 17.) In response, Plaintiff first notes that the parties' joint case management plan contemplated the addition of new officers to the complaint following discovery. (Doc. 29, p. 9 of 25.) Second, Plaintiff argues that, although she did possess the names of Figge and Seitz at the commencement of the lawsuit, she did not know that they played a role in causing her injuries until their December depositions. (*Id.* at pp. 9-11 of 25.) Finally, Plaintiff contends that

---

courts in the Third Circuit have analyzed late filings under Rule 16(b)(4)'s good cause standard. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 611 F. App'x 86, 89 (3d Cir. 2015) ("Rule [16(b)(4)] . . . applies where the district court's scheduling order includes an explicit deadline for filing supplemental pleadings."); *see also E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 339-40 (3d Cir. 2000); *Collegesource, Inc. v. Academyone, Inc.*, 597 F. App'x 116, 124 n. 5 (3d Cir. 2015); *Jackson v. City of Phila.*, 535 F. App'x 64, 69 (3d Cir. 2013). Therefore, the court concludes that the Rule 6(b)(1)(B) standard is inapposite and will proceed under the appropriate Rule 16(b)(4) standard.

9

Defendants' failure to comply with Federal Rule of Civil Procedure 26 resulted in further delay. (*Id.* at p. 9 of 25.)

Rule 16 "maximize[s] the efficiency of the court system by insisting that attorneys and clients cooperate with the court and abandon practices which unreasonably interfere with the expeditious management of cases." *Newton v. A.C. & S., Inc.* 918 F.2d 1121, 1126 (3d Cir. 1990). For this reason, a party can only establish good cause by demonstrating that he or she could not have met the scheduling deadlines regardless of its diligence.  Fed. R. Civ. P. 16(b)(4) advisory committee's note to 1983 amendment.

Because Rule 16 focuses on scheduling only after an action is commenced, Plaintiff's delay between hiring her attorney and filing suit cannot factor into any diligence analysis as it had no effect on the schedule itself. Once the action commenced, however, Defendants withheld critical information regarding Figge's and Seitz's involvement in Plaintiff's arrest and detention, despite Plaintiff's specific request for information related to the actions of each individual involved in her arrest. (Doc. 28-1, p. 2 of 18.) ("Identify each officer who was in any way involved in the arrest and detention of Plaintiff on or about March 12, 2013 and, for each such persons, set for[th] the nature of such involvement.") In their answers to Plaintiff's first set of interrogatories, which were provided on the September 21, 2015 amendment deadline, Defendants listed the officers who responded to the

10

call, but did not reveal any additional details of their involvement beyond referring Plaintiff to the attached police reports. (Doc. 28-1, pp. 1-2 of 18.) None of the attached documentation to Defendants' responses, however, divulged any information related to the nature and extent of Figge's or Seitz's involvement in Plaintiff's arrest. (*Id.* at pp. 7-18 of 18.) As a result of Defendants' omissions, Plaintiff remained unable to identify the proper defendants until the December depositions.

Defendants argue that Plaintiff should have filed the instant motion to amend earlier, and highlight that Plaintiff sought to substitute Figge and Seitz as parties on November 13, 2015 (Doc. 21), but subsequently withdrew the motion (Doc. 23; Doc. 24). However, Plaintiff only withdrew her first motion for leave to amend the complaint because she "believe[d] it prudent to wait . . . until all discovery ha[d] been completed to ensure any identification of specific individuals [was] accurate." (Doc. 23, p. 2 of 4.) Plaintiff thereafter filed her motion for leave to file an amended complaint within a month of the December depositions and four days after Plaintiff's present counsel entered an appearance. (Doc. 25; Doc. 26.) Such a short delay was of reasonable duration under the circumstances and indicates that Plaintiff exercised reasonable diligence.

Defendants also argue that Plaintiff failed to utilize the requisite diligence when she failed to reach out to her co-arrestee Scott for information related to the

arresting officers' identities. At her December 1, 2015 deposition, Plaintiff testified that Scott informed her that there were "nine or ten cops around [her]" at the time of her arrest but that he did not provide any additional information. (Williams Dep. p. 18.) Although Plaintiff could not recall if she specifically inquired as to the identity of the officers (*id.* at p. 53), it is speculative at best to assume that Scott, who passed away on September 4, 2015 (*id.* at pp. 35-36), would have had that information. According to the incident report provided by Defendants, Plaintiff and Scott fled from their vehicle in opposite directions during the night in question. (Doc. 28-1, p. 14 of 18.) The incident report's narrative contains no information regarding Plaintiff's arrest. (*Id.* at pp. 7-18 of 18.) Given the reduced visibility conditions at night and the crowd of "nine or ten cops" around Plaintiff to which Scott attested, no one can know or deduce whether Scott, in the process of being arrested himself, could have identified any of the officers involved in the alleged use of excessive force on Plaintiff. Therefore, as Plaintiff testified that she spoke with Scott regarding the incident, the court is satisfied that Plaintiff displayed sufficient diligence in reaching out to him.

In conclusion, although Plaintiff knew from her citation that Figge and Seitz were present at the time of her arrest, Defendants' responses hindered Plaintiff's ability to ascertain the extent of Figge's and Seitz's involvement in her arrest until their December depositions. Therefore, the court finds that, under the

circumstances, Plaintiff diligently pursued discovery and has established good cause under Rule 16(b)(4).

## C.    Rule 15(a) Prejudice

Defendants argue that granting the amendment would result in prejudice because it would cause Defendants to change defense theories and would result in a reopening of discovery, thereby causing delay to Monte, Figge, and Seitz. In response, Plaintiffs contend that Defendants had ample opportunity to conduct discovery and that any prejudice resulting from granting the instant motion to amend can be cured by extending the discovery deadlines.

Under Rule 15(a), prejudice may result when a proposed amendment "would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citations omitted). In the absence of undue or substantial prejudice, leave to amend should be granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (quoting *Lundy v. Adamar of New Jersey, Inc.,* 34 F.3d 1173, 1196 (3d Cir. 1994)).

Defendants first argue that they would be prejudiced by the granting of an amendment because it would force them to change their defense from non-involvement in the underlying incident to the justification of force defense, and that they did not seek the proper discovery to support that defense. (Doc. 28, pp. 7-

8 of 17.) This argument, however, belies Defendants' affirmative defenses to Plaintiff's claim for the unlawful use of excessive force. (Doc. 1, Counts III & IV.) Defendants not only raised the defenses of absolute and qualified immunity but stated that "[t]he actions complained of [] were in full accord with the applicable law" (Doc. 16, Affirmative Defenses, ¶¶ D-F), thus contemplating a justification of force defense from the action's outset. Furthermore, Defendants have known or should have known of Plaintiff's potential claims and injuries since November 18, 2013 when defense counsel responded to two notice letters sent by Plaintiff. (Doc. 27-1, pp. 2-3, 6, 8 of 55.) As the amended complaint does not affect the substance of the alleged actions in the complaint, Defendants' failure to adequately prepare their own defense does not support a finding of undue or substantial prejudice.

Defendants also argue that granting the amendment would prejudice Figge, Seitz, and Monte as it would re-open discovery and cause substantial delay. (Doc. 28, pp. 7-8 of 17.) Although "a delay may eventually "become 'undue,' placing an unwarranted burden on the court, or [may] become 'prejudicial,' placing an unfair burden on the opposing party," mere passage of time itself does not require denial of a motion to amend a complaint. *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 614 (3d Cir. 1987) (quoting *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)). Here, Plaintiff promptly amended her complaint within a month of the close of discovery. In addition, to the extent that Defendants argue that the fact

Figge and Seitz were deposed as witnesses, rather than defendants, is critical, this court fails to discern how their deposition testimony would have substantively changed and resulted in prejudice.

Based on the foregoing, the court finds that granting the proposed amendment would not result in prejudice to any of the named or proposed defendants. Inasmuch as the amendment would result in prejudice, the court finds that, under the circumstances, it "can be cured by extending the discovery deadlines." *Stemrich v. Zabiyaka*, Civ. No. 12-cv-1409, 2013 WL 3340960, *5 (M.D. Pa. July 2, 2013).

### D.    Rule 15(c) Relation Back

Defendants do not appear to dispute the presence of the first condition of Rule 15(c)(1) that the claims against Figge and Seitz arose out of the same conduct, transaction, or occurrence set forth in the original pleading. Instead, Defendants contend that Plaintiff did not provide Figge and Seitz notice within the 120 day time period provided by Rule 4(m), thereby prejudicing Figge's and Seitz's ability to collect evidence and construct a defense. As a result of the lack of notice, Defendants also argue that Figge and Seitz did not know and should not have known that, but for a mistake concerning their identity, they would have been parties to the action. Plaintiffs argue in response that Figge and Seitz possessed both actual and constructive notice of the action.

Rule 15(c)(1)(C)(1) does not require actual service of process on the party sought to be added in order to satisfy the notice requirement. *Singletary*, 266 F.3d at 195. Notice requires only knowledge of the existence of the action, not its institution. Fed. R. Civ. P. 15(c)(1)(C)(i) advisory committee's note to 2007 amendment ("What counts is that the party to be brought in have notice of the existence of the action, whether or not the notice includes details as to its 'institution.'").

The Third Circuit allows notice to be imputed either under the shared attorney or identity of interest methods. *Singletary*, 266 F.3d at 196. The shared attorney method of imputing Rule 15(c)(1)(C)(i) notice requires that, "when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Id.* Figge and Seitz, however, were not represented by defense counsel within the first 120 days and are not currently represented by the same attorney as the named defendants. Therefore, notice cannot be imputed to Figge and Seitz under the shared attorney method.

Under the identity of interest method, notice is imputed to parties that "are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* at 197 (quoting 6A Charles A. Wright, *Federal Practice and Procedure* §1499, at

16

146 (2d ed. 1990)); *see also Garvin*, 354 F.3d at 223. Generally, "a non-management employee . . . does not share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to the employee for Rule [15(c)(1)(C)(i)] purposes." *Singletary*, 266 F.3d at 200. Additional facts may, however, permit the inference that notice was actually received. *Id.*

In *Singletary*, the Third Circuit analyzed a First Circuit case where a newly added defendant prison guard had witnessed the plaintiff's stabbing by other inmates, assisted in the subsequent investigation, and had continued guarding the plaintiff. *Id.* at 198 (citing *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8 (1st Cir. 1990)). In imputing notice to the prison guard, the First Circuit relied on the fact that the originally named defendants were the prison guard's superiors, that the guard was present during the stabbing, and that the guard continued to work in the intensive treatment unit where the plaintiff remained housed. *Id.* (citing *Ayala Serrano*, 909 F.2d at 13). While none of these factors were present in *Singletary,* the Third Circuit did not foreclose the possibility that circumstances such as these would be sufficient to impute notice under the identity of interest method. *Id.* at 199-200.

This court concludes that, based upon the unique facts of this case, notice can be imputed to both Figge and Seitz through the identity of interest method. Figge's supervisory status as a police sergeant results in a closer identity of interest

between the parties than a mere employer-employee relationship. *Montanez v. York City, Pa.*, Civ. No. 12-cv-1530, 2014 WL 671433, *6, (M.D. Pa. Feb. 20, 2014) (finding that a police sergeant's status rose above that of a non-management employee). In addition, Figge and Seitz were members of the same police department, worked the same shift at the time of the underlying incident, were directly involved in the underlying incident along with Defendant Monte, and presumably belonged to the same police union. *Billy v. Peiper*, Civ. No. 11-cv-1577, Dkt. 27, p. 8 of 12 (M.D. Pa. June 6, 2012) (holding that it was reasonable to impute notice under the identity of interest method to proposed defendants who worked the same shift, for the same police department, in the same union, and were all involved in the same incident as the named defendants).[3] Therefore, Figge's and Seitz's interests are sufficiently related to those of Defendants and warrant imputed notice under the identity of interest theory.

In addition, notice under Rule 15(c)(1)(C) must occur within the period provided by Rule 4(m). Rule 4(m) contains an exception to the time limit for service, which requires the court to extend the time if a plaintiff shows good cause for the failure. Fed. R. Civ. P. 4(m). As previously discussed, the court found good cause under Rule 16(b)(4) due to Defendants' failure to provide full and

---

[3] Although Plaintiff contends that Figge received actual notice when discussing the case with Dehart and Hansel and when Figge read a newspaper article regarding the lawsuit, Plaintiff does not allege, nor does Figge's deposition reveal, any dates for these interactions. As a result, the court cannot determine if Figge received actual notice of the lawsuit during the Rule 4(m) period.

appropriate responses to Plaintiff's requests for discovery. For similar reasons, the court also finds that Plaintiff has demonstrated good cause to suspend the Rule 4(m) notice period.

Accordingly, Plaintiff has met her burden under Rule 15(c)(1)(C).

## IV.   <u>Conclusion</u>

In conclusion, the court finds that Plaintiff diligently pursued her case and satisfied the good cause requirement under Federal Rule of Civil Procedure 16(b)(4). The parties do not dispute the first condition of Federal Rule of Civil Procedure 15(c), and for the reasons provided above, the court also finds that Plaintiff has met her burden as to the second and third conditions. Because all three conditions of Rule 15(c) have been met, the amendment to the complaint adding Figge and Seitz as defendants in the action relates back to the filing of the original complaint and is not barred by the statute of limitations. Accordingly, the court will grant's Plaintiff's motion for leave to file an amended complaint.

An appropriate order will issue.

 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: May 6, 2016