## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLASHIA WILLIAMS**<br>**Plaintiff,** | : | **CIVIL ACTION NO.** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF YORK, PENNSYLVANIA;** | : | |
| **and VINCENT MONTE; NICHOLAS** | : | |
| **FIGGE; and TERRY SEITZ, in their** | : | |
| **individual capacities;** | : | |
| **Defendants,** | : | **JURY TRIAL DEMANDED** |
| | : | |

## AMENDED COMPLAINT

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Willashia Williams seeks damages to redress the deprivation, under color of state law, of rights secured to her under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. Specifically, on March 12, 2013 at approximately 8:00 p.m., Plaintiff was falsely arrested and detained with excessive force by Defendants, including, but not limited to, York City Policy Officers Vincent Monte, Terry Seitz, and Sergeant Nicholas Figge ("Police Defendants"). During and following the unlawful arrest and detention of Plaintiff, Defendants used excessive force that resulted in significant personal injuries to Plaintiff. As a result of the incident, Plaintiff suffered significant

1

permanent physical injury, mental anguish, shame, humiliation, indignity, and damage to reputation, economic damages, and loss of enjoyment of life, among other damages. Plaintiff brings both federal and state law claims against Police Defendants, as well as the City of York.

2. Plaintiff herein demands that this matter be tried before a jury.

## JURISDICTION

3. Jurisdiction is conferred upon this Court by 28 U.S.C. §1343(3) and (4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. §1983, and by 28 U.S.C. §1331, which provides jurisdiction over all cases brought pursuant to the Constitution and laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

## PARTIES

4. Plaintiff, Willashia Williams ("Plaintiff"), is a nineteen year old African-American female who, at the time of the events surrounding this action, was a resident of York City.

5. Defendant Vincent Monte is an adult Caucasian male who was, at all times relevant hereto, employed as a police officer with the York City Police Department ("Officer Monte" or "Monte").

6. Defendant Terry Seitz is an adult Caucasian male who was, at all times relevant hereto, employed as a police officer with the York City Police Department ("Officer Seitz" or "Seitz").

7. Defendant Nicholas Figge is an adult Caucasian male who was, at all times relevant hereto, employed as a Sergeant with the York City Police Department ("Sergeant Figge" or "Figge").

8. Defendant City of York is a third-class city organized and existing under the laws of the Commonwealth of Pennsylvania ("City of York"), which operates and manages an administrative arm known as the York City Police Department, who employs Defendants Monte and Figge and who employed Defendant Seitz at all relevant times hereto.

9. At all times relevant hereto, Police Defendants were acting under the color of state and local law and authority, and are named as Defendants herein each in their individual capacity. At all times relevant hereto, Defendant City of York was responsible for making and enforcing the policies of the York City Police Department, to which Police Defendants must adhere, and was acting under the color of law.

## FACTUAL BACKGROUND

10. On March 12, 2013 at approximately 8:00 p.m., Plaintiff and her then-fiancé, Joseph Scott ("Scott") were with two friends at a park on Princess Street in York City.

11. An unmarked York City Police patrol car pulled up to the curb by Plaintiff.

12. The Officer informed Plaintiff, Scott, and their two friends that there had been a shooting nearby and instructed them to vacate the area.

13. Upon information and belief, the police department had information suggesting that a shooting had occurred nearby involving four African-American males who had fled from their vehicle following an automobile accident a few blocks away, and that said suspects were identified as wearing black pants and white shirts.

14. At all times relevant hereto, Plaintiff was wearing a blue dress with pink leggings.

15. In accordance with the Officer's instruction, Plaintiff and Scott began walking towards their residence.

16. On the way home, Plaintiff and Scott stepped into a corner store located at the corner of Pine and Princess Streets, just a few doors down from their residence.

17. After conversing with friends inside the store, Plaintiff and Scott left the store running towards their house just a few doors away.

18. Upon arriving at the front of their residence, Plaintiff and Scott were confronted by a marked police car.

19. Suddenly, numerous other police cars and police officers came upon Plaintiff and Scott from all directions.

20. The officer(s), in an aggressive manner, ordered Plaintiff and Scott to lie down on the ground.

21. While Plaintiff was in the process of moving to the ground, an unknown Officer grabbed the back of her head and threw her upon the ground causing Plaintiff's face to strike the pavement in a forceful manner causing Plaintiff significant pain.

22. An Officer and/or Officer Seitz then proceeded to forcefully place their knee upon Plaintiff's back as Officer Seitz handcuffed Plaintiff, causing her to experience severe pain in her right arm.

23. Plaintiff vocally complained about the pain and asked him to stop.

24. Instead, an Officer and/or Officer Seitz forcefully placed his knee upon Plaintiff's neck causing additional pressure and pain.

25. At no time while being handcuffed on the ground did Plaintiff struggle or resist Officer Seitz's forceful actions in any way rending such use of force unnecessary.

26. Officer Seitz then forcefully grabbed Plaintiff and picked her up to her feet.

27. On information and belief, Officer Seitz pushed Plaintiff causing her to trip over another Officer's foot and stumble.

28. Without cause, an Officer shouted to fellow officers that Plaintiff was attempting to flee, at which point an unknown officer grabbed Plaintiff and forcefully threw her down onto the curb, causing a chest contusion and severe pain.

29. While Plaintiff was on the curb, two Officers, including Sergeant Figge, drew their tasers and threatened to use them on Plaintiff even though she was immobilized and handcuffed on the ground.

30. Eventually, Plaintiff was lifted up and forcefully thrown into a police vehicle and transported to the police station on King Street by Officer Seitz.

31. While en route, Plaintiff asked why she was being arrested, to which Officer Seitz replied, "Shut the fuck up."

32. While en route, Plaintiff was experiencing severe pain in her right wrist as a result of the handcuffs and the manner they were placed on herby Officer Seitz.

33. Plaintiff was taken to the basement of the police station and seated with her left hand cuffed to a bench.

34. Officer Seitz and/or Officer Monte were in the process of gathering Plaintiff's personal information and had asked Plaintiff to provide her name.

35. When his initial computer search turned up no records attached to Plaintiff's name, Officer Seitz and/or Officer Monte began accusing Plaintiff of providing false information.

36. Sergeant Figge then came down the steps and said, in reference to Plaintiff, "that's the ugly black motherfucker that I saw running."

37. Sergeant Figge ordered Officer Seitz or Officer Monte to cuff Plaintiff's uncuffed right wrist to the bench.

38. Officer Seitz or Officer Monte then made movements to handcuff Plaintiff's right hand to the bench.

39. Plaintiff told Officer Seitz and/or Officer Monte that her wrist was hurting and asked if she could remain as she was with only her left hand cuffed to the bench.

40. While Plaintiff was seated and otherwise immobile, calm, and cooperative, Officer Seitz or Officer Monte grabbed Plaintiff by the neck and pushed her forcefully against the wall.

41. Officer Seitz or Officer Monte then grabbed Plaintiff's right wrist while twisting it and said, "I'll break your fucking arm if you don't cooperate."

42. Officer Seitz or Officer Monte continued to handcuff Plaintiff's right wrist to the bench, which caused Plaintiff to suffer severe pain.

43. After repeatedly interrogating Plaintiff and accusing her of providing a false identity, the Officers found her records in the computer system.

44. Plaintiff was then issued a citation for a violation of 18 P.S. §5503(a)(4) and released.

45. The next day, Plaintiff was treated at Memorial Hospital for her injuries.

46. Plaintiff was diagnosed with a fracture of the Ulnar Styloid in her right wrist and a contusion to her chest wall.

47. Plaintiff was referred to Orthopedic & Spine Specialists ("OSS") for ongoing care of her fractured wrist.

48. During the course of the following months, Plaintiff underwent a course of care by OSS to treat her fractured wrist.

49. As a result of her wrist fracture, Plaintiff suffered, and continues to suffer, swelling and numbness in her right wrist, as well as ongoing and severe pain and discomfort.

50. As a result of her wrist fracture, Plaintiff has suffered a diminished ability in her right wrist to engage in typical activities of daily living without severe

pain and discomfort, such as carrying items, writing, and other ordinary movements and/or tasks.

51. It is believed and therefor averred that the damage done to Plaintiff's wrist during the course of the unlawful arrest as set forth herein is permanent in nature and will continue to result in her diminished capacity for the rest of her life.

52. As a result of the damage done to Plaintiff's wrist during the course of the unlawful arrest as set forth herein, Plaintiff has and will continue to incur medical expenses associated with the treatment and care of her wrist.

53. As a result of the damage done to Plaintiff's wrist during the course of the unlawful arrest as set forth herein, Plaintiff has and will continue to suffer from severe pain and discomfort.

54. As a result of the damage done to Plaintiff's wrist during the course of the unlawful arrest as set forth herein, Plaintiff has and will continue to suffer great humiliation, embarrassment, mental anguish, and loss of life's pleasures and enjoyments.

55. On April 19, 2013, Plaintiff appeared before Magisterial District Judge Ronald J. Haskell, Jr. to defend against the citation issued to her for disorderly conduct arising out of the events of March 12, 2013.

56. As a result of those proceedings, at which both Plaintiff and Sergeant Figge and Officers Monte and/or Seitz were present and testified, Plaintiff was found not guilty.

57. After being found not guilty, Sergeant Figge and Officers Monte and/or Seitz apologized to Plaintiff and asked if she would be filing a lawsuit after seeing the cast on her wrist.

## CAUSES OF ACTION

### COUNT I
### FALSE ARREST PURSUANT TO 42 U.S.C. §1983 AGAINST POLICE DEFENDANTS

58. The foregoing Paragraphs are incorporated herein as if fully set forth.

59. Police Defendants had neither valid evidence for the arrest of Plaintiff nor legal cause or excuse to seize and detain her on March 12, 2013.

60. Police Defendants did intentionally, knowingly, or recklessly intend to confine Plaintiff.

61. Plaintiff was conscious of the confinement and did not consent to the confinement.

62. The confinement was not otherwise privileged.

63. Police Defendants had no legal cause or excuse to detain Plaintiff in the manner set forth herein.

64. Police Defendants subjected Plaintiff to an unlawful and excessive detention in violation of Plaintiff's civil rights under the Fourth Amendment to the United States Constitution.

65. Police Defendants' acts and omissions, performed under the color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiff's rights, deprived Plaintiff of her liberty when they subjected Plaintiff to an unlawful, illegal, and excessive detention, in violation of her rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

66. In so acting, Defendants abused their power and authority as officers of the York City Police Department under the color of state and/or local law.

67. Police Defendants further failed, individually and collectively, to intervene at a time when such intervention was possible to prevent another from violating Plaintiff's constitutional rights as otherwise set forth herein.

68. All of the foregoing actions or inactions on the part of Police Defendants were made with specific intent or with a deliberate indifference to Plaintiff's federally-protected Constitutional Rights.

69. All of the foregoing actions or inactions on the part of Police Defendants constitute both the cause-in-fact and the proximate cause of the associated deprivations of Plaintiff's Constitutional Rights as aforesaid.

70. All of the foregoing actions or inactions on the part of Police Defendants violated clearly established Constitutional Rights about which a reasonable person would have known.

71. As a direct and proximate result of the foregoing, Plaintiff suffered severe and permanent physical and psychological injuries, mental anguish, and economic damages including attorney's fees, damage to reputation, shame, humiliation, and indignity.

## COUNT II
## FALSE ARREST PURSUANT TO 42 U.S.C. §1983 AGAINST CITY OF YORK

72. The foregoing Paragraphs are incorporated herein as if fully set forth.

73. Upon information and belief, the City of York had a policy and/or custom of arresting and detaining individuals despite the lack of probable cause, and that Plaintiff was falsely and unlawfully arrested pursuant to said policy and/or custom despite having not violated any law or committed any crime.

74. Upon information and belief, the City of York had a policy and/or custom of failing to adequately hire, train, supervise, discipline, and/or terminate its officers, staff agents, and employees, including Police Defendants, thereby failing to adequately discourage further constitutional violations on the part of its officers, staff, agents, and employees.

75. As a result of the above described policies and customs, the officers, staff, agents, and employees of the City of York, including Police Defendants, believed that their actions would not be properly monitored by supervisory officers and that their misconduct would not be investigated or sanctioned, but would be tolerated in accordance with the aforementioned policy(ies) and/or custom(s).

76. The aforementioned policy(ies) and/or custom(s) demonstrate a deliberate indifference on the part of the policymakers of the City of York to the constitutional rights of arrestees and were the cause of the violations of Plaintiff's rights alleged herein.

77. As a direct and proximate result of the foregoing, Plaintiff suffered severe and permanent physical and psychological injuries, mental anguish, economic damages including attorney's fees, damage to reputation, shame, humiliation, and indignity.

## COUNT III
## EXCESSIVE FORCE PURSUANT TO 42 U.S.C. §1983 AGAINST POLICE DEFENDANTS

78. The foregoing Paragraphs are incorporated herein as if fully set forth.

79. The incident described herein that resulted from the intentional application of physical force by Police Defendants constituted a seizure.

80. Police Defendants use of physical force during the course of seizing Plaintiff as aforesaid was unreasonable under the totality of the circumstances.

81. Police Defendants had no legal cause, reason or excuse to use excessive force in effectuating Plaintiff's arrest.

82. Police Defendants violated Plaintiff's Fourth and Fourteenth Amendment right to be free from unreasonable seizures when they used excessive force on her.

83. At the time Police Defendants seized Plaintiff as aforesaid, plaintiff posed no threat to the safety of the Police Defendants or others.

84. Plaintiff was not actively resisting arrest or attempting to evade arrest.

85. Police Defendants' actions and inactions were grossly disproportionate to the need for action and were unreasonable under the circumstances.

86. Police Defendants further failed, individually and collectively, to intervene at a time when such intervention was possible to prevent another from violating Plaintiff's constitutional rights as otherwise set forth herein.

87. All of the foregoing actions or inactions on the part of Police Defendants were made with specific intent, or with a deliberate indifference to Plaintiff's federally-protected Constitutional Rights.

88. All of the foregoing actions or inactions on the part of Police Defendants constitute both the cause-in-fact and the proximate cause of the associated deprivations of Plaintiff's Constitutional Rights as aforesaid.

89. All of the foregoing actions or inactions on the part of Police Defendants violated clearly established Constitutional Rights about which a reasonable person would have known.

90. As a direct and proximate result of the foregoing, Plaintiff suffered severe and permanent physical and psychological injuries, mental anguish, economic damages including attorney's fees, damage to reputation, shame, humiliation, and indignity.

## COUNT IV
## EXCESSIVE FORCE PURSUANT TO 42 U.S.C. §1983 AGAINST CITY OF YORK

91. The foregoing Paragraphs are incorporated herein as if fully set forth.

92. Upon information and belief, the City of York had a policy and/or custom of using unconstitutional excessive force in arresting and detaining individuals, and that Plaintiff suffered the application of such unconstitutional excessive force pursuant to said policy and/or custom despite having not violated any law or committed any crime.

93. Upon information and belief, the City of York had a policy and/or custom of failing to adequately hire, train, supervise, discipline, and/or terminate its officers, staff agents, and employees, including Police Defendants, thereby failing to adequately discourage further constitutional violations on the part of its officers, staff, agents, and employees.

94. As a result of the above described policies and customs, the officers, staff, agents, and employees of the City of York, including Police Defendants, believed that their actions would not be properly monitored by supervisory officers and that their misconduct would not be investigated or sanctioned, but would be tolerated in accordance with the aforementioned policy(ies) and/or custom(s).

95. The aforementioned policy(ies) and/or custom(s) demonstrate a deliberate indifference on the part of the policymakers of the City of York to the constitutional rights of arrestees and were the cause of the violations of Plaintiff's rights alleged herein.

96. As a direct and proximate result of the foregoing, Plaintiff suffered severe and permanent physical and psychological injuries, mental anguish, economic damages including attorney's fees, damage to reputation, shame, humiliation, and indignity.

## COUNT V
## VIOLATION OF DUE PROCESS IN THE COURSE OF DETENTION PURSUANT TO 42 U.S.C. §1983 AGAINST POLICE DEFENDANTS

97. The foregoing Paragraphs are incorporated herein as if fully set forth.

98. Following the seizure of Plaintiff's person by Police Defendants as aforesaid, Plaintiff assumed the legal status of pretrial detainee status for the purposes of procedural due process.

99. During the course of the detention following the arrest of Plaintiff by Defendants on March 12, 2013, Plaintiff was intentionally and maliciously subjected to unconstitutional punishment without due process of law when she was viciously attacked and severely injured while in handcuffs at the police station.

100.    Police Defendants' actions and/or inactions during Plaintiff's detention as described herein were not incident to some other legitimate governmental or law enforcement purpose.

101.    Police Defendants' actions and inactions were grossly disproportionate to the need for action and were unreasonable under the circumstances.

102.    Police Defendants' actions and inactions were made with specific intent to cause harm that was unrelated to a legitimate law enforcement interest.

103.     Police Defendants' actions and inactions shock the conscience.

104.     Police Defendants further failed, individually and collectively, to intervene at a time when such intervention was possible to prevent another from violating Plaintiff's constitutional rights as otherwise set forth herein.

105.     All of the foregoing actions or inactions on the part of Police Defendants were made with specific intent, or with a deliberate indifference to Plaintiff's federally-protected Constitutional Rights.

106.     All of the foregoing actions or inactions on the part of Police Defendants constitute both the cause-in-fact and the proximate cause of the associated deprivations of Plaintiff's Constitutional Rights as aforesaid.

107.     All of the foregoing actions or inactions on the part of Police Defendants violated clearly established Constitutional Rights about which a reasonable person would have known.

108.     As a direct and proximate result of the foregoing, Plaintiff suffered severe and permanent physical and psychological injuries, mental anguish, economic damages including attorney's fees, damage to reputation, shame, humiliation, and indignity.

## COUNT VI
## VIOLATION OF EIGHTH AMENDMENT IN THE COURSE OF DETENTION PURSUANT TO 42 U.S.C. §1983 AGAINST POLICE DEFENDANTS

109.    The foregoing Paragraphs are incorporated herein as if fully set forth.

110.    The foregoing actions and/or inactions on the part of Defendants causing injury while Plaintiff was in their custody constitute an unnecessary and wanton infliction of pain upon Plaintiff in violation of the Eighth and Fourteenth Amendments prohibition of cruel and unusual punishment.

111.    The actions and/or inactions on the part of Defendants causing injury to the Plaintiff while she was in their custody were motivated by a desire to inflict unnecessary and wanton pain.

112.    The actions and/or inactions on the part of Defendants causing injury to Plaintiff while in their custody were not otherwise privileged, and were not taken in a good-faith attempt to restore or maintain discipline or order.

113.    The actions and/or inactions on the part of Defendants causing injury to Plaintiff while she was in their custody were intended to maliciously and sadistically cause harm that was not de minimis in nature.

114.    Police Defendants further failed, individually and collectively, to intervene at a time when such intervention was possible to prevent another from violating Plaintiff's constitutional rights as otherwise set forth herein.

115.   All of the foregoing actions or inactions on the part of Police Defendants were made with specific intent, or with a deliberate indifference to Plaintiff's federally-protected Constitutional Rights.

116.   All of the foregoing actions or inactions on the part of Police Defendants constitute both the cause-in-fact and the proximate cause of the associated deprivations of Plaintiff's Constitutional Rights as aforesaid.

117.   All of the foregoing actions or inactions on the part of Police Defendants violated clearly established Constitutional Rights about which a reasonable person would have known.

118.   As a direct and proximate result of the foregoing, Plaintiff suffered severe and permanent physical and psychological injuries, mental anguish, economic damages including attorney's fees, damage to reputation, shame, humiliation, and indignity.

## COUNT VII
## BATTERY – PENNSYLVANIA TORT AGAINST POLICE DEFENDANTS

119.   The foregoing Paragraphs are incorporated herein as if fully set forth.

120.   On March 12, 2013, Police Defendants, individually and/or collectively through common design or mutual aid, intended to cause harmful or offensive bodily contact with Plaintiff.

121.    Police Defendants did, individually and/or collectively through common design or mutual aid, by and through their actions and inactions as aforesaid, intentionally, knowingly, or recklessly cause Plaintiff to suffer and experience harmful or offensive bodily contact during the course of her unlawful arrest.

122.    Police Defendants did, individually and/or collectively through common design or mutual aid, by and through their actions and inactions as aforesaid, intentionally, knowingly, or recklessly cause Plaintiff to suffer and experience harmful or offensive bodily contact during the course of her detention following her unlawful arrest.

123.    Police Defendants caused said harmful and offensive bodily contact without a valid legal privilege or justification.

124.    Police Defendants actions or inactions, individually and/or collectively through common design or mutual aid, were willful, malicious, wanton, reckless, or oppressive sufficient to award Plaintiff punitive damages.

125.    As a direct and proximate result of the foregoing, Plaintiff suffered severe and permanent physical and psychological injuries, mental anguish, economic damages, damage to reputation, shame, humiliation, and indignity.

## COUNT VIII
## FALSE IMPRISONMENT – PENNSYLVANIA TORT AGAINST POLICE DEFENDANTS

126.    The foregoing Paragraphs are incorporated herein as if fully set forth.

127.    On March 12, 2013, Police Defendants had neither valid evidence, legal cause, or excuse for the confinement of Plaintiff.

128.    Police Defendants did intentionally, knowingly, or recklessly intend to confine Plaintiff.

129.    On March 12, 2013, Police Defendants did intentionally, knowingly, or recklessly confine Plaintiff by and through their actions and/or inactions, individually and collectively through common design and mutual aid.

130.    Plaintiff was conscious of the confinement and did not consent to the confinement.

131.    The confinement was not otherwise privileged.

132.    Police Defendants actions or inactions, individually and/or collectively through common design or mutual aid, were willful, malicious, wanton, reckless, or oppressive sufficient to award Plaintiff punitive damages.

133.    As a direct and proximate result of the foregoing, Plaintiff suffered severe and permanent physical and psychological injuries, mental anguish, economic damages, damage to reputation, shame, humiliation, and indignity.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and award her all remedies available to her at law, including, but not limited to:

1. Compensatory damages in a full and fair sum to be determined by a jury;

2. Punitive damages in an amount to be determined by a jury;

3. Pre- and post-judgment interest on any monetary awards;

4. Reasonable attorney's fees pursuant to 42 U.S.C. §1988;

5. Injunctive relief preventing all Defendants from violating the Constitutional and civil rights of Plaintiff and any other person; and

6. Any such other relief as to this Court seems proper.

Respectfully Submitted,

**BENNLAWFIRM**

Date: January 8, 2016     By:     s/ Niles S. Benn, Esquire
PA16284
103 East Market Street
P.O. Box 5185
York, PA 17405-5185
(717) 852-7020
(717) 852-8797
nbenn@bennlawfirm.com
Attorney for Plaintiff