IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLASHIA WILLIAMS,** | : | **Civil No. 1:15-cv-0493** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF YORK, PENNSYLVANIA,** | : | |
| **and VINCENT MONTE, NICHOLAS** | : | |
| **FIGGE and TERRY SEITZ, in their** | : | |
| **individual capacities,** | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

## MEMORANDUM

In this Section 1983 civil rights action, Plaintiff brings claims for false arrest, excessive force, battery, and false imprisonment against the City of York, Pennsylvania, as well as three police officers, Vincent Monte, Nicholas Figge, and Terry Seitz. Presently before the court are cross-motions for summary judgment. For the reasons stated herein, the court will deny Plaintiff's motion for partial summary judgment and grant in part and deny in part Defendants' motion for summary judgment.

## I.     Background

In considering the instant motions, the court relied on the uncontested facts or, where the facts were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to the nonmoving party.

## A.   Facts

Plaintiff, Willashia Williams ("Plaintiff" or "Williams"), is an African-American woman who was eighteen years old and a resident of the City of York ("York") at the time of the incident. Vincent Monte ("Officer Monte") and Terry Seitz ("Officer Seitz") were patrol officers, and Nicholas Figge ("Sergeant Figge") was a sergeant, with the York City Police Department ("YCPD"). Other than the date of the incident at issue, March 12, 2013, and certain events that occurred prior to Defendants' interaction with Plaintiff, there is little agreement regarding what occurred that night.

The parties do agree on the following:   At approximately 8:35 p.m. on March 12, 2013, Officer Lowe reported via the police radio that there were shots fired and that the suspects' fled in a white vehicle, but stated that he and other officers could not pursue the vehicle, because they were on foot. Sergeant Figge, however, was driving near the scene when the suspects' vehicle pulled in front of him. Office Lowe reported, and Sergeant Figge confirmed, that there were three occupants in the vehicle. The suspects fled at a high rate of speed while Sergeant Figge and Officer Jay pursued them through multiple streets in York. The vehicle subsequently crashed into a parked car outside of the officers' view. Officer Jay was the first to arrive at the crash site and saw one of the passengers flee on foot to the south of the accident. The driver and other passenger had already left the

2

accident scene. Sergeant Figge arrived on scene moments after Officer Jay, but left soon after to pursue the driver and additional passenger. (Figge Dep., p. 12.) Officer Jay stayed at the accident scene to complete the accident investigation report during which he found a spent .38 caliber shell casing inside the vehicle. (Jay Dep., pp. 6, 10-12; Doc. 84-9, p. 2 of 7.)

After the accident, dispatch reported that the driver fled northbound on foot. Officer Jay assumed that both the driver and second passenger fled northbound but did not see either person flee in that direction. (Jay Dep., p. 17.) Shortly after leaving to pursue the driver and second passenger, Sergeant Figge observed two people running away from the accident area in the eastbound direction on Princess Street.[1] (Figge Dep., pp. 12-13.) Sergeant Figge ordered those two people to stop while reporting over the radio: "They're running. They're running eastbound on Princess towards Pine. One of the guys has kind of a red jacket on, long dreads, blue pants, with a white stripe. The other guy's got a black jacket with an orange stripe. North on Pine." Plaintiff agrees that she and Joseph Scott ("Scott"), her then-boyfriend, "ran up Princess Street, headed towards Pine." While driving in his unmarked, blue Crown Victoria, Sergeant Figge, who was in full uniform, held his

---

[1] The parties dispute how far Sergeant Figge traveled before seeing the runners.

firearm out of the window and ordered Plaintiff and Scott to get on the ground.[2] The parties debate whether Plaintiff and Scott stopped immediately upon Sergeant Figge's command or continued to run down the block. (*Compare* Doc. 86, pp. 5-6 *with* Doc. 94, pp. 6-10.) Regardless, at some point, Scott stopped near the corner of Princess and Pine Streets and lay down prone on the ground. Plaintiff continued running on Princess Street, ran onto the porch of a house, and tried to open the door. When Officer Monte arrived on scene moments later,[3] he saw Plaintiff and Scott lying face down on the ground. (Monte Dep., p. 17.) Officer Monte exited his vehicle and handcuffed Scott. Once other officers arrived, Sergeant Figge exited his vehicle and told two officers "to grab" Plaintiff. (Figge Dep., p. 17.) They did so, and Officer Seitz, who was on scene at this point, handcuffed Plaintiff. To restrain Plaintiff, an officer placed his knee on Plaintiff's back. Both Plaintiff and Scott were in custody within one minute of Sergeant Figge's initial report of them running on Princess Street.

---

[2] York's "Daily Call For Service Log" indicates that Sergeant Figge reported over the radio two people running less than two minutes after the report of a white vehicle fleeing the scene of shots fired. (Doc. 86-5, p. 1 of 4.)

[3] The parties agree that only about 20 to 23 seconds elapsed between the time Sergeant Figge reported Plaintiff and Scott were running and, the time Officer Monte parked at Princess and Pine Streets.

Thirty-one seconds after Officer Monte parked his vehicle, Plaintiff and Scott begin having a conversation with officers.[4] From Officer Monte's exterior dashcam recording, one can hear an officer order someone to get on the ground. Throughout the audio, Plaintiff can be heard complaining and, at times, yelling, including yelling at officers: "Get off of me!"[5] At one point, Scott yells: "Hey babe, calm down man!"

While walking to Officer Seitz's vehicle, Plaintiff tripped on an officer's foot. Officer Monte subsequently sees Plaintiff "on the ground kicking and screaming."[6] The following conversation can be heard from Officer Monte's exterior dashcam footage:

> Officer: "If you don't stop, I am going to tase you!"
> Officer: "Stop or I'll tase you!"
> Officer: "Relax! Relax!"
> Plaintiff: "Get off of me!"
> Officer: "Stop or I'll tase you!"
> Plaintiff: "Get off of me!"
> Officer: "Relax!"
> Plaintiff: "Get off of me!"
> Officer: "There ain't nothing you're going to say or do that is going to get you out of . . ."
> Plaintiff: "I'm not doing shit!"
> Officer: "Shut your mouth."

---

[4] Approximately ninety seconds after his arrival, Officer Monte walked Scott to his police vehicle. Scott notified Officer Monte that he had an active warrant for his arrest.

[5] It is often difficult to understand the exact conversation taking place between Plaintiff and the officers on scene.

[6] Plaintiff agrees that Officer Monte was still placing Scott in his vehicle and, thus, could not have tripped Plaintiff.

> Plaintiff: " . . . my fucking . . ."
> Officer: "Now stand up and act like you have some sense."

Sergeant Figge ordered Officer Seitz to cite Plaintiff with disorderly conduct. Plaintiff was then placed in Officer Seitz's vehicle and transported to City Hall. Officer Seitz had no further conversations with Sergeant Figge or any other officers at the scene. Scott was also transported to City Hall by Officer Monte.[7] Once at City Hall, Officer Seitz handcuffed one of Plaintiff's arms to a bench.[8] While handcuffed, Scott yelled at Plaintiff to calm down and relax. Thereafter, Sergeant Figge ordered an officer to handcuff Plaintiff's right arm as well.[9] Although the parties dispute whether Plaintiff alerted any officers that the handcuffs were too tight and were hurting her writs, they agree that Plaintiff did not complain to Sergeant Figge about her pain. Sometime while at City Hall, Sergeant Figge asked Plaintiff to calm down, and she complied. Officer Seitz confirmed Plaintiff's identity, issued her a citation (no. P9536668-1), and released

---

[7] Scott was handcuffed to a bench at City Hall by Officer Monte. Officer Monte identified Scott, learned he had three active arrest warrants, and issued him a citation for disorderly conduct.

[8] Plaintiff initially testified that it may have been Officer Monte who handcuffed her left arm to the bench. After viewing an image of Officer Monte, however, she confirmed that Officer Seitz handcuffed her rather than Officer Monte.

[9] Defendants aver that Sergeant Figge ordered Plaintiff's second arm handcuffed because he was concerned for her safety.

her from custody. On April 19, 2013, Plaintiff appeared *pro se* for the disorderly conduct citation summary trial and was found not guilty.[10]

The remaining details of the story, as highlighted by these examples, are matters of significant debate. Plaintiff alleges that prior to running down Princess Street, she and Scott were at a park in York with two of their friends. A police officer told them to evacuate the area because there had been a shooting. To get home more quickly, Plaintiff and Scott decided to run back to their house, running up Princess Street towards Pine Street. At this point, Sergeant Figge saw Plaintiff and Scott running and yelled for them to stop. Plaintiff submits that when Officer Seitz arrested her, he threw her to the ground. She alleges that the officers were "really forceful and rough with [her], like [she] was a man." (Williams Dep., pp. 56-57.) Defendants aver that Plaintiff was kicking, flailing around, being disorderly, and yelling while she was being handcuffed. She reportedly refused orders to place her hands behind her back, was being uncooperative, and swearing at officers. At City Hall, Plaintiff avers that her wrist was hurting and asked to have the handcuffs removed. An officer purportedly approached her, twisted her arm, threw her against the wall, and threatened if she did not give him her arm, he would break it. Plaintiff alleges that after the handcuffs were removed, her wrist was swollen making it difficult to sign the citation issued to her. Further, as a result

---

[10] Officer Monte and Sergeant Figge were present at Plaintiff's trial.

of the excessive forced used against her, Plaintiff alleges that she sustained a fractured wrist and bruised ribs. In contrast, Defendants claim Plaintiff was extremely noisy, loudly pounding her free arm on a metal wall. The competing versions of the evening are each supported by evidence of record.

### B.    Procedural History

Plaintiff initiated this action by filing a complaint in the Middle District of Pennsylvania on March 11, 2015, and subsequently amended her complaint with leave of court on May 6, 2016. (Docs. 1, 33.) In her amended complaint, Plaintiff asserts claims for false arrest, excessive force, battery, and false imprisonment against Monte, Figge, and Seitz, as well as *Monell* claims for false arrest and excessive force against York. Following a long and arduous discovery period, Plaintiff filed a motion for partial summary judgment along with a supporting brief and statement of facts. (Docs. 81-84.) Defendants also filed a motion for summary judgment and statement of facts, followed by a brief in support. (Docs. 85-87.) Both motions have been fully briefed and are ripe for disposition. (Docs. 89-91, 94, 96, 98, 108, 111-112.)

## II.    Standard of Review

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment. Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law, and is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the nonmoving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232

(3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.    Discussion

In her motion, Plaintiff argues that summary judgment should be granted in her favor because Sergeant Figge lacked reasonable suspicion to detain her, and Sergeant Figge and Officer Seitz lacked probable cause for her arrest. (Doc. 82, pp. 8-15.) Defendants oppose Plaintiff's motion submitting that Sergeant Figge had reasonable suspicion to stop Plaintiff for several reasons, including that she was running from police in a high crime area[11] near the scene of a shooting suspect's car accident. (Doc. 90, pp. 7-16.) In addition, Defendants argue there was probable

---

[11] This argument is supported by Exhibits 12 through 15 attached to Defendants' statement of facts in opposition to Plaintiff's motion for partial summary judgment. Exhibits 12 through 15 have been stricken from the record and cannot be used at trial per the court's order dated August 7, 2018. (Doc. 126.) Defendants' only other support is Exhibit 16, Sergeant Figge's declaration, stating that "Plaintiff's arrest took place in a high crime area. . . . base[d] upon [his] personal experience working for the York City Police Department and knowledge of the numerous reports of criminal activity in the area." (Doc. 89-16.) This declaration alone is insufficient evidence that the location of Plaintiff's arrest was a high crime area. Accordingly, the court will disregard this argument in its entirety.

cause for Plaintiff's arrest, and further that Sergeant Figge and Officer Seitz are shielded from liability for Plaintiff's initial seizure and arrest by qualified immunity. (*Id.* at 5-7, 16-28.)

Defendants, in support of their summary judgment motion, set forth a myriad of arguments challenging all of Plaintiff's claims. (*See* Doc. 87.) In opposition, Plaintiff defends her claims by submitting that Defendants have failed to establish their entitlement to qualified immunity and summary judgment.[12] (*See* Doc. 96.) The court will address each argument in turn.

### A. Section 1983 Claims

As an initial matter, Section 1983 provides a civil remedy for the "deprivation of any rights, privileges, or immunities secured by the Constitution and law." 42 U.S.C. § 1983. It does not, by itself, create substantive rights, but instead "provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a Section 1983 claim, Plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."

---

[12] Plaintiff concedes that York is not liable for the intentional torts of the individual Defendants or subject to punitive damages and, thus, does not oppose York's request for summary judgment on those issues. (Doc. 96, p. 13 of 39 n. 15.) As such, the court will grant summary judgment in York's favor for Plaintiff's false arrest claim (Count II), and request for immunity from punitive damages. York additionally argues that it is not liable for Plaintiff's claims of battery (Count VII) or false imprisonment (Count VIII). Following a careful review of Plaintiff's amended complaint, she does not assert claims of battery or false imprisonment against York, thus, there is no need to grant summary judgment in York's favor in this regard.

*Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1994) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 2252 (3d Cir. 1995)).

A plaintiff is not guaranteed recovery by satisfying Section 1983's requirements. Rather, police officers are entitled to qualified immunity, *i.e.* "immunity from suit," if, while performing "discretionary functions," their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Crouse v. S. Lebanon Twp.*, 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).

A two-part inquiry is required to determine whether police officers are entitled to qualified immunity. First, the court determines whether the defendant violated the plaintiff's constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If the defendant did not violate the plaintiff's constitutional right, the court must grant summary judgment in the defendant's favor. *Crouse*, 668 F. Supp. 2d at 671 (citing *Saucier*, 533 U.S. at 201). If the plaintiff satisfies the first step, the court must then determine "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. A right is "clearly established" when the circumstances are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Williams v. Bitner*, 455 F.3d

186, 191 (3d Cir. 2006) (quoting *Saucier*, 533 U.S. at 202). Because of the difficult constitutional issues typically involved in cases examining qualified immunity, the court is not required to conduct this two-part inquiry sequentially. *Crouse*, 668 F. Supp. 2d at 671. Nonetheless, "analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity." *Id.* (citations omitted). Accordingly, the court will first address whether Plaintiff's rights were violated, and then determine whether Defendants are entitled to qualified immunity.

### 1. Plaintiff's False Arrest Claim Against Sergeant Figge and Officer Seitz[13]

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Whether a seizure is reasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616 (1989) (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). The court must assess, "on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the

---

[13] Count I of Plaintiff's amended complaint alleges a Section 1983 claim for false arrest against Sergeant Figge and Officers Monte and Seitz. Plaintiff, however, submits that she is not pursuing any false arrest claim against Officer Monte. (Doc. 96, p. 18 of 39.) As such, the court will grant summary judgment in favor of Officer Monte as to Count I of Plaintiff's amended complaint.

promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999).

Brief investigative stops, or *Terry* stops, are seizures subject to the Fourth Amendment and are permitted if an officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In determining the reasonableness of a *Terry* stop, courts must ask if "the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that criminal activity may be afoot." *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003) (quoting *Terry*, 392 U.S. at 21-22) (internal quotations omitted). However, a seizure does not occur every time a police officer approaches an individual to ask a few questions. *Id.* When a reasonable person would no longer feel free to leave, the officer must be able to articulate specific facts justifying the intrusion to satisfy the Fourth Amendment. *Id.* (citing *Florida v. Bostick*, 501 U.S. 429, 437 (1991)).

To determine whether reasonable suspicion exists, courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449

U.S. 411, 417 (1981)). Numerous factors are relevant in evaluating the totality of

the circumstances, including:

> (1) the reputation of the area in which the stop occurred
> for criminal activity; (2) the time of day; (3) the
> geographical and temporal proximity of the stop to the
> scene of an alleged crime; (4) the number of persons in
> the area; (5) whether, even if anonymous, the
> informant(s) communicated by telephone call or in
> person to officers; (6) the timing, quality and content of
> the information communicated by informants; (7) any
> exigent circumstances at the time; and (8) the behavior of
> defendant when police came into his vicinity, even if
> lawful conduct.

*United States v. Fogle*, 515 F. Supp. 2d 474, 484-85 (D.N.J. 2007) (citations

omitted). Concurrently, the court must allow "officers to draw on their own

experience and specialized training to make inferences from and deductions about

the cumulative information available to them that might well elude an untrained

person." *Arvizu*, 534 U.S. at 273. Courts should "give considerable deference to

police officers' determinations of reasonable suspicion." *United States v. Brown*,

765 F.3d 278, 290 (3d Cir. 2014) (quoting *United States v. Mosley*, 454 F.3d 249,

252 (3d Cir. 2006)). Furthermore, courts are reluctant to "'second-guess'

investigative decisions made by officers in hot pursuit of criminal suspects."

*United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002).

The parties do not dispute that Sergeant Figge's actions – holding his

firearm out the window of his unmarked police vehicle while ordering Plaintiff and

Scott to get on the ground – constitute an investigative detention. (*See* Docs. 82, 87, 90, 96.) Notwithstanding such agreement, the court concludes that Sergeant Figge's initial contact with Plaintiff constituted a seizure, which required reasonable suspicion. Thus, the court will address whether Sergeant Figge had the required reasonable suspicion to seize Plaintiff.

Minutes prior to his interaction with Plaintiff, Sergeant Figge pursued a suspects' vehicle with three occupants that fled the scene of a shots fired call. That vehicle crashed into parked cars and the three passengers fled on foot. Sergeant Figge left the accident scene to locate the driver and second passenger, at which point he saw Plaintiff and Scott running eastbound on Princess Street. Plaintiff contends that there is no evidence of her fleeing from the police, rather, she and Scott were "merely running as Sergeant Figge's eyes alighted on them." (Doc. 82, p. 11.) Without more, Plaintiff argues Sergeant Figge lacked reasonable suspicion to seize Plaintiff. (*Id.* at 8-11; *see also* Doc. 96, pp. 9-12 of 39.)  While flight itself is "not necessarily indicative of wrongdoing, . . . it is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Reviewing the totality of the circumstances, Sergeant Figge observed Plaintiff running in geographical[14] and temporal proximity to a shots fired incident with multiple suspects fleeing on foot

---

[14] Even if, as Plaintiff suggests, Sergeant Figge observed Plaintiff running four blocks from the crash site, rather than half a block, she was still within close geographical proximity to the scene of the hit-and-run accident. (*Compare* Doc. 82, p. 10, *with* Doc. 90, p. 13.)

from a hit-and-run accident scene. The Supreme Court recognized in *Terry v. Ohio*, and reiterated in *Illinois v. Wardlow*, that "sometimes behavior giving rise to reasonable suspicion is entirely innocent, but [*Terry*] accepted the risk that officers may stop innocent people." *Wardlow*, 528 U.S. at 130 n.4 (citing *Terry*, 392 U.S. at 30). In this instance, viewing the facts in a light most favorable to Plaintiff, Sergeant Figge had reasonable suspicion based on the totality of the circumstances and information available to him at that moment to seize and detain Plaintiff. Thus, the court will determine whether Sergeant Figge and Officer Seitz had probable cause to arrest Plaintiff.

To maintain her claim for false arrest, Plaintiff must show that Sergeant Figge and Officer Seitz lacked probable cause to arrest her. *See Kokinda v. Breiner*, 557 F. Supp. 2d 581, 592 (M.D. Pa. 2008). "Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense." *Id.* (quoting *Garcia v. Cty. of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)). The "'constitutional validity of the arrest does not depend on whether the suspect actually committed any crime,' but whether the police had probable cause to believe that the individual committed those crimes at the time of his or her arrest." *Crouse*, 668 F. Supp. 2d at 672 (quoting *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005)).

The appropriateness of Plaintiff's arrest depends upon the nature of the crime in question. *Id.* (citing *Wright*, 409 F.3d at 602). Plaintiff was charged with disorderly conduct in violation of 18 Pa. C.S. § 5503(a), which provides:

> A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> (2) makes unreasonable noise;
> (3) uses obscene language, or makes an obscene gesture; or
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

In Pennsylvania, disorderly conduct is "not intended as a catchall for every act which annoys or disturbs people," rather, it is meant to prevent "'recklessly creating a risk' of public alarm, annoyance or inconvenience." *Commonwealth v. Vetter*, 149 A.3d 71, 77 (Pa. Super. Ct. 2016) (quoting *Commonwealth v. Maerz*, 879 A.2d 1267, 1269 (Pa. Super. Ct. 2005)); *see also Commonwealth v. DeLuca*, 597 A.2d 1121, 1123 (Pa. 1991). Furthermore, "[t]he cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." *Id.* (quoting *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999)).

The court finds that there are not sufficient facts to determine whether Sergeant Figge and Officer Seitz had probable cause to arrest Plaintiff for disorderly conduct. Taking the facts in a light most favorable to Plaintiff, at a

minimum, Plaintiff was loud and upset with Defendants. Whether Plaintiff's behavior rose to the level of disorderly conduct is best left for a jury.

Defendants further argue that probable cause existed to arrest Plaintiff for the more serious crimes of criminal escape or harassment since "an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *D.C. v. Wesby*, 138 S. Ct. 577, 584 n.2 (2018) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004)). A person commits criminal escape if "he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited purpose." 18 Pa. C.S. § 5121(a). Defendants contend that Plaintiff fled an investigative detention when she failed to stop immediately upon Sergeant Figge's command. Once again, there is a factual dispute regarding exactly when Plaintiff stopped at Sergeant Figge's command such that the court cannot determine if there was sufficient probable cause for criminal escape. Lastly, the contention that Plaintiff could have been charged with harassment[15] is also unsupported by the factual record. Construing the facts in the light most favorable to Plaintiff, the court is unable to conclude that Sergeant Figge and Officer Seitz

---

[15] "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: . . . (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact . . . [or] (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose." 18 Pa. C.S. § 2709(a)(1), (3).

possessed probable cause sufficient to effectuate Plaintiff's arrest and, therefore, this question is best suited for a jury.[16]

### 2. Plaintiff's Excessive Force Claim Against Sergeant Figge, Officer Monte, and Officer Seitz

The Fourth Amendment grants the right to be free from excessive force during a lawful arrest. *Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 749 (M.D. Pa. 2009) (*Kopec v. Tate*, 361 F.3d 772, 776-78 (3d Cir. 2004)). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Kopec*, 361 F.3d at 776 (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (quoting *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999)). Here, Defendants do not contend that Plaintiff's detention and arrest did not constitute a "seizure;" therefore, the court must only determine whether the force used by the officers was reasonable.

Reasonableness is determined by the totality of the circumstances, *i.e.* whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or

---

[16] Plaintiff further argues that Officer Seitz is not entitled to summary judgment because he lacked independent probable cause for Plaintiff's arrest. However, "an officer can lawfully act solely on the basis of statement issued by fellow officers if the officers issuing the statements possessed the facts and circumstances necessary to support a finding of the requisite basis." *Rogers v. Powell*, 120 F. 3d 446, 453 (3d Cir. 1997) (citing *United States v. Hensley*, 469 U.S. 221, 232 (1985)). Because Sergeant Figge, who directed Officer Seitz to arrest Plaintiff, was aware of her actions since he detained Plaintiff, Officer Seitz could rely on Sergeant Figge's knowledge and instruction.

motivations." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). An officer's good or bad faith motivations are immaterial if the use of force is considered objectively reasonable. *Id.* (citing *Estate of Smith*, 318 F.3d at 515; *Abraham*, 183 F.3d at 289). In determining reasonableness, the court may consider the severity of the crime at issue, whether the individual poses an immediate threat to officers or the public or is considered violent or dangerous, whether the individual is resisting or attempting to evade arrest, the number of persons officers are detaining at one time, the duration of the action, and the possibility that the person may be armed. *Id.* (citing *Graham*, 490 U.S. at 396; *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)). Reasonableness should "frequently remain a question for the jury," but a defendant can "still win on summary judgment if the district court concludes, after resolving all factual disputes in the favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Id.* (quoting *Abraham*, 183 F.3d at 290).

The undisputed facts establish that Officer Seitz handcuffed Plaintiff at the time of her arrest and an officer placed his knee on Plaintiff's back.[17] Once at City Hall, Officer Seitz handcuffed one of Plaintiff's arms to a bench, and Sergeant Figge subsequently ordered an officer to handcuff Plaintiff's other arm as well.

---

[17] Plaintiff concedes that she is not pursuing a claim against Sergeant Figge or Officer Monte regarding the handcuffing at the time of Plaintiff's arrest. She also admits that Officer Monte could not be the officer that tripped her at the arrest scene. However, Plaintiff argues that Sergeant Figge, Office Monte, and Officer Seitz used excessive force on her during other times at the scene of her arrest, as well as at the police station.

While Sergeant Figge was never alerted to Plaintiff's wrist pain, the parties dispute whether Plaintiff notified other officers of her discomfort. Plaintiff alleges that during her arrest, Officer Seitz threw her to the ground and officers were forceful and rough in handling her. At City Hall, Plaintiff contends that officers twisted her arm, threw her against the wall, and threatened to break her arm if she did not provide it to the officer to handcuff to the bench. As a result, Plaintiff purportedly sustained a broken wrist and bruised ribs. These facts, if true, would establish that the officers' use of force was excessive in violation of the Fourth Amendment. Because the court cannot resolve these factual disputes, the reasonableness of the force used should be determined by a jury.

### 3. Qualified Immunity

Based on the court's findings that Plaintiff has established *prima facie* claims for false arrest and excessive force, the court must determine whether Sergeant Figge, Officer Monte, and Officer Seitz are entitled to qualified immunity. The court must ascertain whether the officers violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Wright*, 409 F.3d at 599-600. "[A]ll but the plainly incompetent or those who knowingly violate the law" are protected by qualified immunity. *Dull*, 604 F. Supp. 2d at 752 (quoting *Blackhawk v. Pennsylvania*, 381 F.3d 202, 215 (3d Cir. 2004)). Viewing the evidence in a light most favorable to Plaintiff, the

court must determine whether Defendants should have known that their actions contravened statutory or constitutional guarantees. *Id.* (citing *Gruenke v. Seip*, 225 F.3d 290, 299-300 (3d Cir. 2000)). Granting immunity is appropriate unless the unlawfulness of the conduct is "apparent based upon the law as it existed at the time of defendant's actions." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Notwithstanding, if the qualified immunity analysis requires the resolution of disputed facts, the court must postpone consideration of immunity until a jury resolves those factual issues. *Id.* (*Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006)).

The court holds that a finding of qualified immunity for Plaintiff's false arrest claim as to Sergeant Figge and Officer Seitz is inappropriate at this time in light of the genuine issues of material fact. According to Plaintiff's account of the incident, the facts do not support a finding that a reasonable police officer would believe he had probable cause to arrest Plaintiff. Therefore, Defendants' motion for summary judgment asserting qualified immunity will be denied with respect to Plaintiff's false arrest claim.

The court further finds that the disputed issues of fact prevent application of qualified immunity to Sergeant Figge, Officer Monte, and Officer Seitz for Plaintiff's excessive force claim. The court cannot determine the reasonableness of the officers' actions without ascertaining whether Officer Seitz threw Plaintiff to

the ground, and whether Sergeant Figge, Officer Monte, or Officer Seitz twisted her arm, threw her against a wall, and handcuffed her wrists too tightly at City Hall. Accordingly, Defendants' motion for summary judgment asserting qualified immunity will be denied with respect to Plaintiff's excessive force claim.

### B.    Municipal Liability

Local government entities cannot be held liable under Section 1983 for their employees' acts using the theory of *respondeat superior* or vicarious liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 (1978). However, York can be held liable if Plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694). Once a policy or custom is identified, Plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Must v. W. Hills Police Dep't*, 126 Fed. App'x 539, 544 (3d Cir. 2005) (quoting *Berg v. Cty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000)). A custom is a practice that is "so permanent and well-settled as to virtually constitute law," while a policy is established by showing that a "decisionmaker possessing final authority to establish municipal policy with respect to the action 'issues an official proclamation, policy or edict.'" *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

The failure to adequately train employees may establish Section 1983 liability if the plaintiff provides "evidence of a pattern of constitutional violations." *Must*, 126 Fed. App'x at 544. This failure must "amount to deliberate indifference to the constitutional rights of persons with whom the police come in contact." *Horton v. City of Harrisburg*, No. 06-cv-2338, 2009 WL 2225386, *4 (M.D. Pa. July 23, 2009) (quoting *Colburn v. Upper Darby Twp.*, 943 F.2d 1017, 1028 (3d Cir. 1991). Deliberate indifference requires that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999). "A need for training or other corrective action to avoid imminent deprivations of a constitutional right must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." *Horton*, 2009 WL 2225386 at *4 (quoting *Strauss v. Walsh*, No. 01-cv-3625, 2002 WL 32341791, *3 (E.D. Pa. Dec. 17, 2002)); *Garcia v. Cty. of Bucks*, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001). Plaintiff's recovery also requires that the failure to train claim be "closely related to the ultimate [constitutional] injury." *Id.* (quoting *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 325 (3d Cir. 2005)).

Here, York argues that Plaintiff cannot present evidence that it violated her rights or that there is evidence of any prior constitutional violations or a pattern of such violations relating to use of excessive force. (Doc. 87, pp. 28-30.) In opposition, Plaintiff submits the deposition testimony of Training Coordinator Troy Bankert, Chief of Police Wesley Kahley, Operations Commander Timothy Utley, and Internal Affairs Inspector Dana Ward. Plaintiff argues that the lack of training on what exceeds reasonable use of force, the lack of legal input when creating use of force policies, the lack of long-term oversight, ignorance of complaints of civil rights violations, and the absence of meaningful discipline shows the failure to train and supervise, thus creating a custom of approving of the use of excessive force. (Doc. 96, pp. 29-35.) Once again, the parties disagree regarding the substance and value of this evidence. As such, in reviewing the facts in a light most favorable to Plaintiff, the court finds that reasonable jurors could conclude that York's failure to train its officers establishes deliberate indifference under Section 1983. Accordingly, Defendants' motion for summary judgment will be denied.

### C.   <u>Plaintiff's State Law Claims</u>

Defendants argue that Plaintiff's state law claims for battery and false imprisonment are barred by the Political Subdivision Tort Claims Act ("PTCSA"). The PTCSA grants immunity from liability to municipalities for any damages

resulting from an injury to a person caused by the municipality, its employees, or another person with limited exceptions not applicable in this matter. 42 Pa. C.S. § 8542. This immunity "extends to an employee who is liable [in his individual capacity] for civil damages caused by acts which are within the scope of his office or duties." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). However, this immunity does not protect conduct that "amounts to actual fraud, crime, actual malice or willful misconduct." *Kokinda*, 557 F. Supp. 2d at 594. Willful misconduct is "synonymous with the term intentional tort." *Allen v. District Attorney's Office of Phila.*, 644 F. Supp. 2d 600, 611 (E.D. Pa. 2009) (citations omitted). Because battery and false imprisonment are intentional torts and the court lacks sufficient facts to determine whether Sergeant Figge, Officer Monte, and Officer Seitz acted in a manner constituting willful misconduct, the court will not grant Defendants immunity pursuant to the PSTCA at this time.

### 1. Plaintiff's Battery Claim Against Sergeant Figge, Officer Monte, and Officer Seitz

In Pennsylvania, battery requires "proof that the defendant acted with the intent to cause harmful or offensive bodily contact with the person of the plaintiff and that such contact actually followed." *Dull*, 604 F. Supp. 2d at 754 (citations omitted). Police officers are permitted to commit battery when using a reasonable amount of force when effectuating an arrest. *Id.* (citations omitted). However, use of excessive force dissolves this privilege. *Id.* Because Plaintiff has satisfied her

*prima facie* burden as to her excessive force claim, she has also satisfied that burden regarding battery. Accordingly, Defendants motion will be denied as to this claim and Plaintiff's claim against Sergeant Figge, Officer Monte, and Officer Seitz for battery will proceed to a jury.

### 2. Plaintiff's False Imprisonment Claim Against Sergeant Figge and Officer Seitz[18]

"False arrest and false imprisonment are essentially the same claim." *Kokinda*, 557 F. Supp. at 593 (quoting *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999)). In Pennsylvania, a claim of false imprisonment requires "(1) the detention of another person, and (2) the unlawfulness of such detention." *Id.* (quoting *Renk*, 641 A.2d at 293). The lack of probable cause for an arrest provides an arrestee with a Section 1983 claim for false imprisonment based on a detention pursuant to that arrest." *Crouse*, 668 F. Supp. 2d at 673 (quoting *Groman*, 47 F.3d at 636). Because there is a dispute of facts concerning the existence of probable cause, Defendants motion will be denied as to this claim and Plaintiff's claim against Sergeant Figge and Officer Seitz for false imprisonment will proceed to a jury.

---

[18] Plaintiff admits that she does not assert a claim for false imprisonment against Officer Monte. (Doc. 96, p. 25 of 39 n.24.) As such, summary judgment will be granted in Officer Monte's favor as to Count VIII of Plaintiff's amended complaint.

## IV.    <u>Conclusion</u>

For the reasons stated herein, the court will deny Plaintiff's motion for partial summary judgment and grant in part and deny in part Defendants' motion for summary judgment. An appropriate order will issue.

 s/Sylvia H. Rambo         <br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated: November 15, 2018